United States District Court
Eastern District of Michigan

| | |
|---|---|
| Heather Kerchen, Lori Kerchen, and Dale Kerchen, | Case no: 4:22-cv-12492 |
|     Plaintiffs, | |
| vs. | Hon. Shalina D. Kumar |
| Christian Raphalides (in his individual and official capacities), University of Michigan, James H. Woods (in his individual and official capacities), & Unknown Does (in their individual—and where appropriate—official capacities), | |
|     Defendants. | |

**Dustyn Coontz** (**P80102**)
Attorney for Plaintiffs
1100 W. Saginaw St.
Suite 4A
Lansing, MI 48915
(517) 940-8004
dc@coontzlaw.com

**Brian M. Schwartz** (**P69018**)
**Lawrence T. García** (**P54890**)
**Sydney G. Rohlicek** (**P85655**)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Attorneys for University Defendants
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
garcia@millercanfield.com
rohlicek@millercanfield.com

## Supplemental Brief Supporting Plaintiffs' Response To Defendants' Motion To Dismiss

On May 8, 2023, this Court was set to hear oral arguments on the University defendants' motion to dismiss. On May 4, 2023, the University defendants filed and served supplemental authority supporting their motion.[1] Specifically, the defendants provided two just-released Michigan Supreme Court opinions that bear directly on whether this case is properly before this Court. At the parties' joint request, this Court adjourned oral arguments so that the parties could submit supplemental briefs addressing the impact of the new authority.

### The Two New Cases

On May 2, 2023, the Michigan Supreme Court decided *Christie v. Wayne State Univ.*[2] and *Elia Companies v. Univ. of Mich. Regents*.[3] At issue in

---

[1] *See* Defendants' Notice of Supplemental Authority in Support of Defendants University of Michigan and Dr. James H. Woods' Motion to Dismiss (Defendants' Notice of Supplemental Authority), ECF No. 14.
[2] Christie v. Wayne State Univ., No. 162706 (Mich. May 2, 2023).
[3] Elia Cos. v. Univ. of Mich. Regents, No. 162830 (Mich. May 2, 2023).

2

both cases was the Michigan Court of Claims Act (COCA)'s notice requirement found in Mich. Comp. Laws § 600.6431.

In *Christie*, the plaintiff sued Wayne State University (WSU) for age and disability discrimination after firing her in November 2017. She filed her suit in April 2019 in the Wayne County Circuit Court. The parties never litigated the merits, only the issue the Michigan Supreme Court ultimately decided: whether COCA's notice provision "applies to all claims filed against the state, or only to those claims filed against state defendants in the Court of Claims."[4] Under COCA, "a claim may not be maintained against this state unless the claimant . . . files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state . . . ."[5] A claimant must do so within one year[6] or if claiming property damage or personal injury, within six months.[7]

---

[4] *Christie*, slip op. at 1.
[5] Mich. Comp. Laws § 600.6431(1).
[6] *Id.*
[7] Mich. Comp. Laws § 600.6431(4).

3

The court held that the COCA notice provision applied to all claims against the state, regardless of the venue where the suit is filed.[8] The court emphasized that the statutory language "a claim may not be maintained against the state" applied categorically to all claims against the state.[9] Thus, even when a claimant can choose a venue other than the Court of Claims to litigate its claims against the state, the claimant must still timely file written notice of intention to file a claim with the clerk of the Court of Claims.[10] Because the plaintiff did not file this notice, the court remanded her case to the Wayne County Circuit Court for entry of summary disposition in favor of WSU.[11]

In *Elia*, the court reaffirmed this interpretation of Mich. Comp. Laws § 600.6431 and further held that failure to timely comply with COCA's verification requirements constitutes an incurable defect.[12] There, the

---

[8] *Christie*, slip op. at 3.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 3–4.
[12] Elia Cos. v. Univ. of Mich. Regents, No. 162830, slip op. at 1–2 (Mich. May 2, 2023).

plaintiff operated a coffee shop on the University of Michigan (U-M)'s campus. In April 2018, U-M evicted the plaintiff, and the plaintiff filed suit against U-M in the Washtenaw County Circuit Court in August 2018.[13] The matter was removed from circuit court to the Court of Claims, and the plaintiff never perfected its complaint as required by COCA.[14] Following an order of summary disposition in U-M's favor, the Michigan Court of Appeals held that the plaintiff could correct the defects, even though the one-year period expired.[15]

The Michigan Supreme Court disagreed, holding that the plaintiff's failure to comply with the notice and verification requirements of COCA required dismissal.[16] Unlike statutes of limitations, COCA's notice and verification requirements cannot be tolled during the pendency of an action

---

[13] *Id.* at 2–3.
[14] *Id.* at 3.
[15] *Id.* at 3–4.
[16] *Id.* at 8.

because the notice and verification provisions are essential to bringing the action in the first place.[17]

## What This Means for This Case

At first glance, *Christie* and *Elia* form a one-two punch powerful enough to knock out this suit. The holdings are clear—any action against the state must first begin with a timely filed and verified claim or notice in the Michigan Court of Claims, regardless of where the matter will end up being litigated. The holdings are also directly applicable—the Kerchens have not filed such a claim, let alone timely done so. In their complaint, the Kerchens assert that the statute of limitations would have begun running on October 19, 2020.[18] Assuming the Court accepts that date, the Kerchens were required to fulfill COCA's notice requirements by April 19, 2021. Given the clarity of *Christie* and *Elia*'s holdings, it might seem that this Court has no choice but to dismiss.

---

[17] *Id.* at 7–8.
[18] *See* Complaint, ECF No. 1, PageID.26, ¶ 157.

But there are two closely related reasons why this Court should not dismiss: (1) the Kerchens followed the law as it had been interpreted at the time, and (2) the *Christie* and *Elia* holdings should not have universal retroactive application.

**I. The Kerchens followed the law as it had been interpreted at the time.**

Part of the significance of these two opinions—*Christie*, in particular—is that they created new law in Michigan. *Christie* expressly overturned *Tyrrell v. Univ. of Mich*, which held that the Court of Claims Act's notice requirements applied only to actions brought in the Court of Claims.[19] So if a plaintiff brought suit against the state in a venue other than the Court of Claims, then the plaintiff did not need to adhere to the notice requirements.

The timing of the *Tyrrell* decision is of particular importance here. Again, the Kerchens assert that the statute-of-limitations clock started

---

[19] 335 Mich. App. 254, 269; 966 N.W.2d 219 (2020).

running on October 19, 2020. *Tyrrell* was decided on December 22, 2020. Two months after the Kerchens discovered that the University of Michigan may be responsible for the death of their son and brother (not to mention another young man[20]), the Michigan Court of Appeals issued a published, binding opinion saying that they did not need to abide by COCA's notice requirements if they filed somewhere other than the Court of Claims. In the years between *Tyrrell* and *Christie/Elia*, several other courts reaffirmed the ruling and rationale provided by *Tyrrell*.[21]

The Kerchens took the courts at their word. Thinking they need only adhere to the traditional statutes of limitations (with tolling) and not COCA's six-month mandate, and thinking they needn't give advance notice of a claim so long as it was filed somewhere other than the Court of Claims, the Kerchens acted accordingly. They did what the law—as it was understood at the time—allowed them to do.

---

[20] *See* Complaint, ECF No. 1, PageID.26, ¶ 82 ("Kruse and Raphalides awoke later the morning of September 16, 1998 to find [Christopher] Giacherio dead.").

[21] *See* Williams v. Univ. of Mich., 22-cv-10296, *19-*20 (E.D. Mich. Nov. 8, 2022) (collecting cases).

## II. The holdings in *Christie* and *Elia* should not have universal retroactive application.

Ordinarily, judicial decisions are fully retroactive.[22] But where full retroactivity results in injustice, Michigan courts take a more flexible approach.[23] In Michigan, there is a three-factor test to determine whether a decision should be retroactive: "(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice."[24] This analysis is only triggered when a court announces a new rule of law.[25] Where the Michigan Supreme Court corrects earlier courts' "erroneous interpretations" of plainly written statutes, such a holding is "practically speaking . . . akin to the announcement of a new rule of law."[26]

Where "a distinct class of litigants [is] denied relief because of an unfortunate circumstance of timing," prospective application of a decision

---

[22] Hyde v. Univ. of Mich. Bd. of Regents, 426 Mich. 223, 240; 393 N.W.2d 847 (1986).
[23] Lindsey v. Harper Hosp., 455 Mich. 56, 68; 564 N.W.2d 861 (1997).
[24] People v. Hampton, 384 Mich. 669, 674; 187 N.W.2d 404 (1971).
[25] Riley v. Northland Geriatric Ctr., 431 Mich. 632, 645–46; 433 N.W.2d 787 (1988).
[26] Pohutski v. City of Allen Park, 465 Mich. 675, 698; 641 N.W.2d 219 (2002).

is warranted.[27] In *Pohutski*, one set of plaintiffs filed a class action suit against the City of Allen Park for trespass-nuisance after a large storm caused sewage to back up into their basements, and the other set had similar claims against the City of Farmington Hills.[28] The plaintiffs relied on an earlier Michigan Supreme Court decision, *Hadfield v. Oakland Cnty. Drain Comm'r*,[29] to bar the defendant from asserting governmental immunity.[30]

The *Pohutski* court overturned *Hadfield* because the *Hadfield* court misread a clear and unambiguous statute.[31] At issue was § 7 of the Governmental Tort Liability Act (GTLA), which reads:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.[32]

---

[27] *Id.* at 699.
[28] *Id.* at 679.
[29] 430 Mich. 139; 422 N.W.2d 205 (1988).
[30] *Pohutski*, 465 Mich. at 679.
[31] *Id.* at 678-79.
[32] Mich. Comp. Laws § 691.1407(1).

The *Pohutski* court pointed out that the first sentence applied broadly to governmental agencies (including the state) and the second sentence applied only to the state.[33] Yet the *Hadfield* court, in extending common-law trespass-nuisance liability to municipalities, effectively rewrote the second sentence of § 7 to apply to political agencies other than the state.[34] Finding that the second sentence of § 7 didn't apply to municipalities, the *Pohutski* court then found that the first sentence barred trespass-nuisance liability for municipalities because it was not a statutorily carved-out exception to governmental immunity.[35]

But despite finding for the defendants, the court ultimately held that its decision should be prospectively applied.[36] The first factor—the purpose of the new rule—was to correct a prior erroneous holding of a plainly written statute; prospective application served that purpose.[37] The second

---

[33] *Pohutski*, 465 Mich. at 684–85.
[34] *Id.* at 685–86.
[35] *Id.* at 689-90.
[36] *Id.* at 697.
[37] *Id.*

11

factor—reliance on the old interpretation—also weighed in favor of prospective application because courts, insurance companies, municipalities, and homeowners all relied on *Hadfield*.[38] The third factor—the effect of the decision on the administration of justice—also weighed in favor of prospective application; this is because the Legislature had recently amended the GTLA to provide a remedy for sewage backups.[39] But because that new law wasn't given retroactive effect, it would have left a narrow class of plaintiffs who "would not be afforded relief under *Hadfield* or 2001 PA 222. Rather, they would become a distinct class of litigants denied relief because of an unfortunate circumstance of timing."[40]

*Pohutski* provides the exact framework this Court should employ in deciding whether *Christie/Elia* mandate dismissal in this case. Like the *Pohutski* court, the *Christie/Elia* court effectively created a new rule of law by correcting earlier courts' erroneous statutory interpretation. This addresses

---

[38] *Id.*
[39] *Id.* at 697–98.
[40] *Id.* at 698–99.

both (1) the threshold question of whether a court can engage in the prospective-application analysis and (2) the first factor in that three-part analysis. Employing that three-part analysis here:

1. Just as prospective application served the purpose of the new rule expanding governmental immunity under the GTLA in *Pohutski*, prospective application serves the purpose of the new rule protecting sovereign immunity under COCA in *Christie/Elia*.

2. Just as courts, insurance companies, homeowners, and municipalities relied on the *Hadfield* holding, courts and litigants addressing the notice-and-verification requirements of COCA have relied on *Tyrrell*. True, a broader swath of the population was affected by *Hadfield*. And true, *Hadfield* had been law for 14 years, compared to *Tyrrell*'s two-and-a-half. But that is not to say there has been insignificant reliance in the

wake of *Tyrrell*. Plaintiffs' counsel, for instance, actually relied on *Tyrrell* in assessing the viability of this lawsuit. And several courts, not to mention the litigants in those cases, have relied on *Tyrrell*.[41]

3. The similarities between *Pohutski* and this case are most compelling on the third factor: the effect on the administration of justice. Just as the *Pohutski* opinion came at an inopportune time that would have left a class of people without remedy where there previously was one, so too did *Christie/Elia*. For anyone whose claims against the state accrued between December 22, 2020, and May 2, 2023, Michigan's law was settled: only claims in the Court of Claims were subject to COCA's notice-and-verification requirements. Even those whose claims accrued after May 2, 2022 (for non-personal-injury or -property-damage claims) or after November 2, 2022 (for

---

[41] *See* Williams, 22-cv-10296, *19–*20 (E.D. Mich. Nov. 8, 2022) (collecting cases).

personal-injury or property-damage claims) would have had the benefit of being able to adhere to *Christie/Elia* by perfecting their notice in the Court of Claims. But those whose claims accrued before then have no such opportunity. Because of the narrow class of those impacted in this way—that "distinct class of litigants denied relief because of an unfortunate circumstance of timing"[42]—exempting them from retroactive application of *Christie/Elia* will not overburden the courts and more importantly, will not deny justice to those injured by the State of Michigan.

Admittedly, if the *Christie/Elia* court thought it truly important to have its holdings only take prospective effect, the court could have said so. And it's true that holdings are typically given retroactive effect. So it would be logical to conclude that *Christie/Elia* are by their own terms (or lack of

---

[42] *Pohutski*, 465 Mich. at 699.

terms) retroactive. But that is where the differences between those cases and this one are most important.

In both *Christie* and *Elia*, the plaintiffs' alleged injuries (November 2017 and April 2018, respectively) happened before *Tyrrell* was decided (December 2020). Even COCA's timely notice requirements would have run by no later than November 2018 and April 2019—well before *Tyrrell* was decided. Because the *Christie/Elia* court was interpreting a plainly written statute, it's understandable that the plaintiffs in those cases should not benefit from a court later garbling the statute's plain meaning.

But for the Kerchens, the *Tyrrell* opinion was issued two months after discovering they may have had claims against the University of Michigan. Under COCA, they would have had six months to give notice to the state in the Court of Claims.[43] But *Tyrrell* was a published Michigan Court of Appeals decision, meaning it was binding law in the State of Michigan.[44]

---

[43] MCL 600.6431(4).
[44] Mich. Ct. R. 7.215(C)(2).

Not even an application for leave to appeal to the Supreme Court would have stayed *Tyrrell*'s precedential effect,[45] let alone litigation of the same issue in other cases. So when the Kerchens decided to forgo adhering to COCA's notice provision by filing in federal court, they did what the law allowed them to do at the time. It wasn't until the Michigan Supreme Court handed down *Christie* and *Elia* May 2, 2023, that Michigan law changed.

The Kerchens should not be punished for the *Tyrrell* court getting it wrong. Our courts only work if the citizenry has confidence in them, and dismissing this case erodes that confidence. Dismissing this case because of *Christie/Elia* tells lay-Michiganders that they cannot rely on the Michigan Court of Appeals to properly interpret Michigan's statutes.

This Court was right to allow further briefing following the *Christie* and *Elia* decisions. Those opinions bear directly on issues relevant to how this case—in particular, the University defendants' motion to

---

[45] *Id.* Curiously, the defendant in *Tyrrell*—the University of Michigan—did not timely apply for leave to appeal in that case, 507 Mich. 990, 959 N.W.2d 719 (2021), but instead collaterally attacked its holding in *Elia* until eventually prevailing at the Michigan Supreme Court. That same defendant seeks to benefit from *Christie/Elia* now.

dismiss—should be decided. This Court would also be right to find that *Christie* and *Elia* ultimately don't move the needle. For the reasons stated in this brief and the plaintiffs' earlier responsive brief, this Court should deny the University defendants' motion to dismiss.

          Respectfully submitted,

          /s/ Dustyn Coontz
          Attorney for Plaintiffs
          1100 W. Saginaw St.
          Suite 4A
          Lansing, MI 48915
          dc@coontzlaw.com
          (517) 940-8004

CERTIFICATE OF SERVICE

I certify that on May 22, 2023, I electronically filed this Supplemental Brief Supporting Plaintiffs' Response To Defendants' Motion To Dismiss using the CM/ECF system which will provide electronic copies to counsel of record.

Respectfully submitted,

/s/ Dustyn Coontz_____
Attorney for Plaintiffs
1100 W. Saginaw St.
Suite 4A
Lansing, MI 48915
dc@coontzlaw.com
(517) 940-8004