UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HEATHER KERCHEN et al.,<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>CHRISTIAN RAPHALIDES et al.,<br>　　　　　　　Defendants. | Case No. 22-cv-12492<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER DENYING WITHOUT PREJUDICE THE MOVING DEFENDANTS' MOTION TO DISMISS (ECF NO. 8) AND ORDERING LIMITED DISCOVERY**

## I.    Introduction

Plaintiffs Heather Kerchen, Lori Kerchen, and Dale Kerchen sued Defendants Christian Raphalides, the University of Michigan, and James H. Woods, in his individual and official capacities, for defendants' roles in causing the death of plaintiffs' family member, Todd Kerchen. ECF No. 1.

The University and Woods (the moving defendants) moved to dismiss, and the parties completed briefing. ECF Nos. 8, 10, 11. The moving defendants then filed a notice of supplemental authority, bringing to the Court's attention two recently decided Michigan Supreme Court cases: *Christie v. Wayne State Univ.*, No. 162706, 2023 WL 3213922 (Mich. May 2, 2023) and *Elia Cos., LLC v. Univ. of Mich. Regents*, No. 162830, 2023

WL 3213438 (Mich. May 2, 2023), *reh'g denied*, 991 N.W.2d 580 (Mich. 2023). ECF No. 14. On the Court's order, the parties submitted supplemental briefing on the application of these cases. ECF Nos. 15-17.

This matter is now ripe for decision. For the reasons below, the Court denies the moving defendants' motion without prejudice and orders limited discovery as to the applicability of fraudulent concealment tolling, including whether the moving defendants engaged in any fraudulent concealment so as to toll plaintiffs' claims.

## II.   Factual and Procedural Background

On January 25, 2000, Todd Kerchen was found dead in his home. ECF No. 1, PageID.5. According to Kerchen's then-girlfriend, the couple had gone out drinking the night before and then snorted a white powdery substance once they returned home. *Id.* at PageID.10. The girlfriend later told detectives from the Washtenaw County Sherriff's Department (WCSD) that she believed Kerchen obtained the drugs from Raphalides. *Id.* at PageID.12. An autopsy later declared Kerchen's cause of death to be "drug and alcohol abuse" and confirmed that a lethal dose of fentanyl was in his system. *Id.* at PageID.9.

Raphalides had access to fentanyl while employed in a pharmacology lab at the University of Michigan Medical School. *Id.* at PageID.16-17. On

February 10, 2000, a WCSD detective investigating Kerchen's death interviewed Woods, who was the head of the lab at the time of Raphalides' employment. *Id.* at PageID.16. Woods acknowledged that Raphalides would have had access to fentanyl and would have been able to remove drugs from the lab in a vial that looked exactly like the vial found at the scene of Kerchen's death. *Id.* at PageID.17-18. Woods also said that the labs' drugs are kept in a solution, and because the fentanyl that Kerchen used was powdered, he surmised that that Raphalides would have evaporated or boiled the water from the solution. *Id.* at PageID.18.

On March 6, 2000, WCSD detectives interviewed Woods again. *Id.* at PageID.16. During this interview, Woods described how under the lab's policies, Raphalides could have checked fentanyl out unsupervised and keep it unaccounted for in his locker. *Id.* at PageID.19-23. Woods also said that the lab received fentanyl in powdered form, confirmed that the lab's fentanyl and the fentanyl that killed Kerchen had the same molecular structure, and opened Raphalides' locker, revealing 28 vials of unaccounted for drugs. *Id.* at PageID.23-24.

Following Kerchen's death, WCSD detectives told Kerchen's sister and mother, plaintiffs Heather and Lori, that they were trying to find Raphalides. *Id.* at PageID.24. Lori Kerchen then spoke to Kerchen's

roommates, who told her that Raphalides tried to call Kerchen without realizing that Kerchen had died. *Id.* at PageID.25.

The investigation stalled, the detectives could not find Raphalides, and they did not inform plaintiffs about their interviews with Woods. *Id.* at PageID.24-25. This led plaintiffs to believe that Kerchen died from an ordinary overdose and that the investigation had been closed. *Id.* at PageID.26. Plaintiffs did not learn about the interviews with Woods and the connections between Raphalides, the lab, and the fentanyl that killed Kerchen until Heather Kerchen received certain documents on October 19, 2020.[1] *Id.*

On October 17, 2022, plaintiffs filed their six-count complaint in this Court. ECF No. 1. As personal representative of Todd Kerchen's estate, Heather Kerchen asserts against defendants claims under 42 U.S.C. § 1983 for deprivation of life without due process, M.C.L. 600.2922 for wrongful death, and sections 5 and 6 of Michigan's Drug Dealer Liability Act (DDLA), M.C.L. 691.1605, .1606, for the illegal marketing of fentanyl. *Id.* Individually, plaintiffs assert claims against defendants under Sections 5 and 7 of the DDLA, M.C.L. 691.1605, .1607, for the illegal marketing of fentanyl and cocaine. *Id.*

_____

[1] In their response, plaintiffs assert that Heather Kerchen received the documents detailing the WCSD detectives' investigation through a Freedom of Information Act request. ECF No. 10, PageID.107.

## III.    Standard of Review

The moving defendants factually challenge subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1). When a motion factually, as opposed to facially, challenges subject-matter jurisdiction under Rule 12(b)(1), the Court need not accept the complaint at face value. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015). Instead, the Court has "substantial authority" to weigh the evidence and determine whether it has the power to hear the case. *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 814 (6th Cir. 2015) (citation omitted). As the party invoking federal jurisdiction, plaintiffs bear the burden of proving the existence of federal jurisdiction. *See Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308, 311 (6th Cir. 2017). The Court, however, must ultimately "police the boundaries of its limited jurisdiction." *Williams v. City of Detroit*, No. 16-14112, 2019 WL 2410719, at *3 (E.D. Mich. June 7, 2019).

The moving defendants also move to dismiss under Rule 12(b)(6) for failure to state a claim based on applicable statutes of limitations. When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.

2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Because the statute of limitations is an affirmative defense, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). But it is appropriate to dismiss a case when "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* at 547; *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. updated Apr. 2023) ("[T]he applicability of the [affirmative] defense has to be clearly indicated and must appear on the face of the pleading . . . .").

## IV.  Analysis

The moving defendants present alternative grounds for dismissal. They argue that plaintiffs' claims are time-barred by M.C.L. 600.6431, a

notice provision in Michigan's Court of Claims Act (COCA), and by the statutes of limitations applicable to each claim; that Eleventh Amendment sovereign immunity bars the claims against the University and Woods in his official capacity; that qualified and governmental immunity bars the individual-capacity claims against Woods; and that plaintiffs failed to state DDLA claims.

As a threshold matter, the moving defendants do not map out which of their arguments challenge subject-matter jurisdiction under Rule 12(b)(1). However, Eleventh Amendment sovereign immunity may serve as a basis for a Rule 12(b)(1) motion. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). Because the moving defendants "decline[] to raise sovereign immunity as a threshold defense" and instead raise it as one of many alternative grounds for dismissal, the Court need not consider their sovereign immunity argument first. *Id.* at 477. The moving defendants present no other arguments challenging subject-matter jurisdiction and their argument that plaintiffs' claims are time-barred may fully dispose of the case. Accordingly, at this point in the case, the Court considers only whether plaintiffs' claims are time-barred by M.C.L. 600.6431 or the applicable statutes of limitations.

**A. Plaintiffs' state law claims against the University and Woods in his official capacity are not barred under M.C.L. 600.6431.**

The moving defendants argue that M.C.L. 600.6431 bars the state law claims against the University and Woods in his official capacity. M.C.L. 600.6431 contains a notice requirement, providing that for personal injury claims, "a claim may not be maintained against th[e] state" of Michigan unless the claimant, within six months after the claim accrues, "files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim" against the state or any of its institutions or arms. In *Christie*, the Michigan Supreme Court recently held that "under the unambiguous language of M.C.L. 600.6431, any claim against the state, regardless of where it is filed, must comply with M.C.L. 600.6431[]'s notice requirements," except for claims brought under Michigan's Wrongful Imprisonment Compensation Act. 2023 WL 3213922, at *8. The court then applied *Christie* in *Elia*, stating that "all parties with claims against the state . . . must comply with the requirements of M.C.L. 600.6431" and that the failure to timely do so "mandates dismissal." *Elia*, 2023 WL 3213438, at *3-4.

The moving defendants contend, and plaintiffs admit, that plaintiffs failed to comply with M.C.L. 600.6431. The Court agrees. Plaintiffs assert that their claims accrued on October 19, 2020, when Heather Kerchen

received the documents describing how defendants allegedly maintained or exploited lab policies that contributed to Kerchen's death. ECF No. 10, PageID.107. They then brought their claims in federal court. ECF No. 1. Even if plaintiffs' claims accrued on October 19, 2020 but are proceeding in federal court, plaintiffs failed to comply with M.C.L. 600.6431 because they never filed a written notice in the Michigan court of claims (Court of Claims). Therefore, under *Christie* and *Elia* (*Christie/Elia*), M.C.L. 600.6431 mandates dismissal of plaintiffs' claims against the University and Woods in his official capacity.

However, plaintiffs argue that *Christie/Elia* should not retroactively apply to their case. Generally, judicial decisions have complete retroactive effect. *Rowland v. Washtenaw Cnty. Rd. Comm'n*, 731 N.W.2d 41, 55 (Mich. 2007). But where injustice might result from full retroactivity, a more flexible approach is warranted. *Id.*

The Michigan Supreme Court left unaddressed the retroactive effect of *Christie* and *Elia*. However, in *Christie*, the court remanded the case for entry of summary disposition in favor of the defendant because the plaintiff failed to comply with M.C.L. 600.6431. 2023 WL 3213922, at *11. And in *Elia*, the court retroactively applied *Christie,* concluding that the plaintiff's

failure to comply with M.C.L. 600.6431 mandated dismissal. 2023 WL 3213438, at *3. *Christie/Elia* appear to have retroactive effect.

Plaintiffs, however, argue that the Court should take a flexible approach to determining the extent of *Christie/Elia*'s retroactive effect, because unlike the plaintiffs in *Christie/Elia*, plaintiffs did not comply with M.C.L. 600.6431 in reliance on *Tyrrell v. University of Michigan*. 966 N.W.2d 219 (Mich. Ct. App. 2020).

*Tyrrell* held that compliance with M.C.L. 600.6431 is only necessary for claims proceeding in the Court of Claims. *See id.* at 221. Although the claims in *Christie* and *Elia* were brought outside the Court of Claims, *see Christie*, 2023 WL 3213922, at *4; *Elia*, 2023 WL 3213438, at *2, the *Christie/Elia* plaintiffs could not rely on *Tyrrell* to forgo compliance with M.C.L. 600.6431: The *Christie/Elia* plaintiffs' claims accrued in 2017 and 2018 respectively, so M.C.L. 600.6431's one-year compliance period expired in 2018 and 2019 respectively. *See Christie*, 2023 WL 3213922, at *3; *Elia*, 2023 WL 3213438, *2. Accordingly, their periods to comply with M.C.L. 600.6431 expired long before *Tyrrell* was decided in December 2020.

Here, plaintiffs brought their claims in federal court and assert that their claims accrued in October 2020—two months before *Tyrrell* was decided. M.C.L. 600.6431 gave them until April 2021 to comply, but under

*Tyrrell*, they did not need to comply if they filed their claims in federal court. They forwent compliance and in 2022 filed their claims in this Court. ECF No. 1. Now, more than two years later, their reliance on *Tyrrell* may cause their claims to be barred if *Christie/Elia* are applied retroactively to their claims. The Court therefore finds that injustice might result from full retroactivity of *Christie/Elia*, warranting a determination as to whether *Christie/Elia* should retroactively apply to plaintiffs' claims. *See Rowland*, 731 N.W.2d at 55.

To determine whether to depart from the general rule of complete retroactivity, a court must first determine whether the decision announced a "new rule of law," as opposed to a "return to an earlier rule" of law. *Id.* at 55-56 (citations omitted). A new rule of law results from overruling clear and uncontradicted caselaw. *Adams v. DOT*, 655 N.W.2d 625, 628 (Mich. Ct. App. 2002) (citations omitted).

Plaintiffs argue that *Christie/Elia* created a new rule of law by overturning *Tyrrell*. Plaintiffs contend that in the years between *Tyrrell* and *Christie/Elia*, courts have reaffirmed *Tyrrell*'s holding and rationale. Citing pre-*Tyrrell* cases, the moving defendants counter that the issue of whether compliance with M.C.L. 600.6431 was necessary for claims brought outside the Court of Claims was unsettled.

The Court finds that *Christie*, applied by *Elia*, announced a new rule of law by overturning *Tyrrell*. In *Pohutski v. City of Allen Park*, binding precedent misread a statute's plain language, but courts and parties alike relied on the precedent such that, by overruling that precedent, *Pohutski* announced a new rule. *See* 641 N.W.2d 219, 233 (2002). Likewise, *Tyrrell* was published, binding authority which held that M.C.L. 600.6431 applied only to claims proceeding in the Court of Claims, despite the statute's plain language. *See* 966 N.W.2d at 221, 227. Courts and parties, including plaintiffs, proceeded not to question *Tyrrell* but instead to rely on it in determining that compliance with M.C.L. 600.6431 was unnecessary in their respective cases. *See Williams v. Univ. of Mich.*, No. 22-CV-10296, 2022 WL 16796741, at *7 (E.D. Mich. Nov. 8, 2022) (listing cases).

Conversely, in *Rowland*, the overruled decisions which similarly misread a notice statute's plain language were based on anomalous or inconsistent caselaw, so those decisions were not "clear and uncontradicted." *See* 731 N.W.2d at 56. By overruling those decisions, *Rowland* was a return to an earlier rule of law. *Id.* Here, although *Tyrrell* misread M.C.L. 600.6431, it relied on reading the COCA and M.C.L. 600.6431 in context and found support in caselaw. *See* 966 N.W.2d at 227-28. As courts and parties relied on *Tyrrell*, *Tyrrell* was clear and

uncontradicted before *Christie*. And in overturning *Tyrrell*, the *Christie* court expressly stated that *Tyrrell* resolved an "issue of first impression" and then relied on M.C.L. 600.6431's text, its history, and the Court of Claims' history to overturn *Tyrrell*. *Christie*, 2023 WL 3213922, at *6. The *Christie* court did not rely on precedent, suggesting that precedent did not resolve the issue. *See id.* Because no earlier rule existed to which *Christie* could return, *Christie/Elia* announced a new rule—not a return to an earlier rule. *See id.*; *Rowland*, 731 N.W.2d at 55-56.

When a decision announces a new rule of law, the Court considers the following factors to determine whether the decision should apply prospectively: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect of retroactivity on the administration of justice. *Rowland*, 731 N.W.2d at 55 (citing *Pohutski*, 641 N.W.2d at 233).

In *Pohutski*, the court prospectively applied a new rule it announced. 641 N.W.2d at 233. After a storm caused sewage to back up into their homes, the homeowners in *Pohutski* sued a city in reliance on an old rule interpreting a statute to extend trespass-nuisance liability to municipalities. *Id.* at 224. But the court announced a new rule providing that the statute did not extend but instead barred trespass-nuisance liability to municipalities.

*Id.* at 229, 233. The new rule's purpose was to correct a misreading of the statute, so prospective application served the new rule's forward-looking purpose. *Id.* at 233. Aside from courts relying on the old rule, insurance decisions had been based on the old rule, thereby creating extensive reliance. *Id.* Last, the court found that if it applied the new rule retroactively, the homeowners "would not be afforded relief . . . but would become a distinct class of litigants denied relief because of an unfortunate circumstance of timing." *Id.* at 234.

Similarly, *Christie/Elia* warrant limited retroactive effect. As to *Pohutski*'s first factor, the purpose of *Christie/Elia*'s new rule is to correct *Tyrrell*'s misreading of M.C.L. 600.6431, ensuring proper interpretation going forward. *See Christie*, 2023 WL 3213922, at *6; *Elia*, 2023 WL 3213438, at *3. Prospective application of *Christie/Elia* would serve this purpose.

As to *Pohutski*'s second factor and as mentioned above, courts and parties relied on *Tyrrell* in determining whether compliance with M.C.L. 600.6431 was necessary. Although, as the moving defendants contend, *Tyrrell* was decided two months after the latest that plaintiffs' claims might have accrued, plaintiffs and other parties in general still adversely positioned themselves by forgoing compliance with M.C.L. 600.6431 during the time that *Tyrrell* was binding authority. *See also Rowland*, 731 N.W.2d

at 56 (stating "no exigent circumstances" warranted complete prospective application—"[u]nlike in *Pohutski*, no one was adversely positioned . . . in reliance on [the overturned decisions]" (citations omitted)).

As to *Pohutski*'s last factor, were the Court to give *Christie/Elia* full retroactive effect, a distinct class of litigants would be denied relief due to unfortunate timing. That class would consist of plaintiffs and other parties who did not comply with M.C.L. 600.6431 in reliance on *Tyrrell* but whose periods to comply with M.C.L. 600.6431 expired in the years between *Tyrrell* and *Christie/Elia*'s decision dates. Merely due to *Christie/Elia*'s timing, the members of that class would not be able to recover on their claims.

Because *Christie/Elia* announced a new rule of law and the relevant factors support limited retroactive application, the Court concludes that *Christie/Elia* do not retroactively apply to plaintiffs' state law claims against the University and Woods in his official capacity. Under *Tyrrell*'s old rule, plaintiffs did not need to comply with M.C.L. 600.6431 because they brought their claims in this Court, not the Court of Claims. *See* 966 N.W.2d at 221. Accordingly, plaintiffs' claims are not barred by M.C.L. 600.6431.

**B. The Court requires more information to determine whether plaintiffs' claims are time-barred under the applicable statutes of limitations.**

The moving defendants argue that various statutes of limitations bar plaintiffs' § 1983, wrongful death, and DDLA claims. The Court analyzes each claim in turn.

The statute of limitations for a § 1983 claim arising in Michigan is the state's three-year limitations period for personal injury claims. M.C.L. 600.5805(2); *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005). A § 1983 claim accrues "when the plaintiff knows or has reason to know" through reasonable diligence of the injury forming the basis of the action. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Plaintiffs allege that the moving defendants deprived Kerchen of life without due process by maintaining lab policies that "directly led to Todd Kerchen's death" on January 25, 2000. ECF No. 1, PageID.32. The complaint is not clear as to exactly when plaintiffs knew or had reason to know of Kerchen's death, but the Court infers that plaintiffs, as Kerchen's family, knew or had reason to know of Kerchen's death in 2000. The § 1983 claim, therefore, accrued more than 20 years ago.

Plaintiffs argue that the § 1983 claim could not have been brought until Heather Kerchen received the documents describing how each

defendant contributed to Kerchen's death, including that the drugs came

from the University's lab. But as the moving defendants correctly argue, the

§ 1983 claim did not accrue when Heather Kerchen learned who may be

responsible for Kerchen's death. *See Ruiz-Bueno v. Maxim HealthCare*

*Servs.*, 659 F. App'x 830, 834 (6th Cir. 2016). Instead, the § 1983 claim

accrued when plaintiffs knew or had reason to know of Kerchen's death—

the injury on which the § 1983 claim rests. *See Green v. City of Southfield*,

759 F. App'x 410, 414 (6th Cir. 2018). Accordingly, the § 1983 claim is

time-barred absent tolling.

The statute of limitations for a wrongful death claim asserted under

the Governmental Tort Liability Act's (GTLA) gross negligence exception

uses the COCA's limitations period—"3 years after the claim first accrues."

M.C.L. 600.6452(1); *see Wesche v. Mecosta Cnty. Rd. Comm'n*, 746

N.W.2d 847, 856 (Mich. 2008) (wrongful death claim is "filter" for underlying

claim); M.C.L. 691.1411(3) (incorporating COCA's limitations period).

Under Michigan law, except where otherwise enumerated, a tort claim

accrues when the wrong upon which the claim is based was done. *Curran*

*v. City of Dearborn*, 957 F. Supp. 2d 877, 883 (E.D. Mich. 2013). "[T]he

wrong is done when the plaintiff is harmed rather than when the defendant

acted." *Trentadue v. Gorton*, 738 N.W.2d 664, 670 (Mich. 2007). Here,

plaintiffs allege that the moving defendants were grossly negligent in maintaining their lab policies which led to Kerchen's death and bring their wrongful death claim under GTLA's gross negligence exception. *See* ECF No. 1, PageID.33. Because the harm—Kerchen's death—occurred in 2000, the wrongful death claim accrued more than 20 years ago and is time-barred absent tolling.

The statute of limitations for plaintiffs' DDLA claims is unclear, but the moving defendants assume, and plaintiffs do not dispute, that Michigan's six-year "catch-all" period of limitation in M.C.L. 600.5813 governs. *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 669 (E.D. Mich. 2022). A DDLA claim accrues when "a person who may recover has reason to know of the harm from use of an illegally marketed controlled substance that is the basis for the cause of action and . . . the controlled substance use is the cause of the harm." M.C.L. 691.1612. Here, the harm upon which plaintiffs' DDLA claims are based is Kerchen's fentanyl overdose in 2000. *See* ECF No. 1, PageID.33-39. The latest that plaintiffs had reason to know that a controlled substance caused Kerchen's death was whenever plaintiffs could have reasonably received the autopsy report confirming that Kerchen's system had a fatal amount of fentanyl. *See id.* at PageID.9-10. The complaint does not make clear when plaintiffs could have received the

autopsy report. But the Court infers that plaintiffs could have done so in 2000, because by the time the WCSD detectives interviewed Woods on February 10, 2000, the detectives had already started investigating the fentanyl that the autopsy report revealed killed Kerchen. *See id.* at PageID.17. Plaintiffs' DDLA claims therefore accrued more than 20 years ago and are time-barred absent tolling.

Plaintiffs argue that the statutes of limitations for all their claims should be tolled based on a "false representation or concealment" of a material fact. ECF No. 10, PageID.110. M.C.L. 600.5855 provides the standard for fraudulent concealment tolling. *See Trentadue*, 738 N.W.2d at 671; *see also Curran*, 957 F. Supp. 2d at 883 (stating that state law tolling rules apply to § 1983 claims). M.C.L. 600.5855 provides that a plaintiff may commence an action any time within two years after discovering the existence of a claim or the identity of the person who is or may be liable for the claim if that person "fraudulently conceals the existence of the claim or identity of any person who is liable for the claim."

For fraudulent concealment tolling to apply, a "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment" and show "that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery."

*Mays v. Snyder*, 916 N.W.2d 227, 250-51 (Mich. Ct. App. 2018). Plaintiffs contend that they relied on the concealment of material facts surrounding Kerchen's death and that the moving defendants had actual knowledge of such facts. The moving defendants counter that plaintiffs' allegations show only that the WCSD detectives misled plaintiffs, not the moving defendants.

The allegations in plaintiffs' complaint are insufficient for the Court to determine whether fraudulent concealment tolling applies. Plaintiffs allege that during an interview with a WCSD detective, Woods said that the drugs in the lab were kept in a solution and surmised that Raphalides would have evaporated the solution to deliver fentanyl to Kerchen in powder form. ECF No. 1, PageID.18. But in a second interview, Woods said that the lab received the fentanyl in powder form, seemingly contradicting his previous assumption. *Id.* at PageID.23. In both interviews, Woods described the connections between Raphalides, the lab, and the fentanyl that killed Kerchen. *Id.* at PageID.17-24. WCSD detectives then shifted their investigation from the lab and the fentanyl and centered it on Raphalides' whereabouts, which led Lori Kerchen to speak to Kerchen's roommates about Raphalides. *Id.* at PageID.24-25. The WCSD detectives could not find Raphalides, and the investigation stalled. *Id.* at PageID.24-25. Because the WCSD detectives did not inform plaintiffs about the moving

defendants' connection to Raphalides and the fentanyl, plaintiffs were misled into believing that Kerchen had died from an ordinary overdose and that the investigation had been closed. *Id.* at PageID.25-26. Although unlikely, it is possible that Woods took steps designed to direct the investigation onto Raphalides and hid the extent of the moving defendants' contributions to Kerchen's death, thereby misleading the WCSD detectives and plaintiffs.

Moreover, these allegations do not affirmatively show whether or not fraudulent concealment tolling applies. The allegations focus on how the WCSD detectives may have misled plaintiffs. As the moving defendants also point out, the allegations do not show that the moving defendants took any affirmative acts or misrepresentations that may have misled plaintiffs. Although plaintiffs must "plead more than mere silence" on Woods' part, *Res. at Heritage Vill. Ass'n v. Warren Fin. Acquisition, LLC*, 850 N.W.2d 649, 665 (Mich. Ct. App. 2014), the Court exercises caution in determining on a motion to dismiss that fraudulent concealment tolling clearly does not apply and that plaintiffs' entire case is accordingly time-barred. *See* Wright & Miller, *supra*, § 1357 (stating affirmative defense "has to be clearly indicated"); *see also, e.g.*, *McEvoy v. Apollo Glob. Mgmt., LLC*, No. 3:17-CV-891-J-32MCR, 2020 WL 60132, at *5 (M.D. Fla. Jan. 6, 2020)

**Page 21 of 23**

(expressing reluctance to decide motion to dismiss on dispositive statute of limitations issue where plaintiff raised equitable grounds in opposition).

Accordingly, it is premature for the Court to rule on the moving defendants' statute of limitations arguments without more information. The Court will therefore deny without prejudice the moving defendants' motion to dismiss and order the parties to engage in limited discovery as to the applicability of fraudulent concealment tolling, including whether the moving defendants engaged in any fraudulent concealment so as to toll plaintiffs' claims. Because this issue is dispositive as to all of plaintiffs' claims, the Court declines to consider the moving defendants' other arguments at this time. After the parties have conducted limited discovery on this issue, the moving defendants may reassert their statute of limitations arguments, as well as their other arguments, in a renewed motion to dismiss or another future motion.

## V.    Conclusion

For these reasons, the moving defendants' motion to dismiss (ECF No. 8) is **DENIED WITHOUT PREJUDICE**. **IT IS ORDERED** that the parties engage in limited discovery as to the applicability of fraudulent concealment tolling, including whether the moving defendants engaged in any fraudulent concealment so as to toll plaintiffs' claims.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: August 2, 2023